# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROBERT and MYRNA DANGANAN<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin Insurance Corporation<br><br>Defendant. | Case No. 2:17-cv-02786-RFB-BNW<br><br>**ORDER** |

## I. INTRODUCTION

Before the Court are Plaintiffs Robert and Myrna Danganan's ("the Danganans") and Defendant American Family Mutual Insurance Company's ("American Family") Motions for Summary Judgment. ECF Nos. 42, 43. For the following reasons, the Court denies American Family's Motion in its entirety and grants the Danganans' motion in part.

## II. PROCEDURAL BACKGROUND

The Danganans sued American Family in the Eighth Judicial District Court of Clark County on or around October 4, 2017. ECF No. 1. In their complaint, the Danganans brought breach of contract and tortious bad faith claim-handling claims against American Family for its failure to make payments for water damage allegedly covered by its policy. ECF No. 1-1. American Family removed the case to this Court on November 3, 2017. ECF No. 1. American Family answered on November 14, 2017. ECF No. 5. Both parties moved for summary judgment in October 2018. ECF No. 42, 43. Both motions were fully briefed. ECF Nos. 44, 45, 46, 47. The Court held a hearing on the motions for summary judgment on April 24, 2019. ECF No. 49. The Court took both motions under submission for a written order to issue. ECF No. 49.

### III. FACTUAL BACKGROUND

The Court makes the following findings of fact. These findings are limited to this order and are not meant to usurp findings that a jury would have to make in a jury trial.

#### a. Undisputed Facts

The Danganans purchased a home located at 9610 Drayton Avenue, Las Vegas, Nevada 89148 (the "property") in 2001. The home and its contents were insured by American Family under an insurance policy that provided certain insurance coverage effective January 8, 2016 through January 8, 2017 (the "Policy").

The Policy generally provides insurance coverage for damage to structures, personal property and loss of use of property. Under the main heading, "Coverage A—Dwelling and Dwelling Extension", and the subheading "Losses Not Covered," the Policy proceeds to list eight conditions under which losses are excluded. Number three under that subheading states that American Family "do[es] not cover loss . . . resulting directly or indirectly from . . .Continuous or Repeated Seepage or leakage of water or steam from within a plumbing . . . system . . . which occurs over a period of weeks, months or years." Number six under that same subheading is titled "Other Causes of Loss.'' Within that subheading of "Other Causes of Loss," the Policy provides that it "do[es] not cover loss to the property . . . resulting directly or indirectly from or caused by one or more of the following . . .birds, vermin, rodents, insects or domestic animals." However, and importantly, within that same "Other Causes of Loss" subsection, the Policy also states that "[i]f any of these cause water or steam to escape from a plumbing . . . system, *we cover loss caused by the water or steam.*" (emphasis added). The finally sentence under the category "Losses Not Covered" section states that the Policy "do[es] cover any resulting loss to property described in Coverage A—Dwelling and Dwelling Extension from items 2 through 8 above, not excluded or excepted in this policy." The words "seepage" and "leakage" are not defined in the Policy.

On the evening of September 21, 2016, Pat Warczynski, the Danganans' daughter's future mother -in-law, went to stay at the property for a few days with the Danganans' permission. When she arrived, the property appeared to be flooded. At that point, no one was living at the property full-time, and it was unknown what had caused the failure of the water supply line. Warczynski

spoke with the Danganans via video chat, who observed that a "continuous flow" of water appeared to be coming out of the water line to the toilet in the bathroom.

On September 21, 2016, at around 9:30pm, the Danganans submitted a claim with American Family. On September 22, 2016, the Danganans' claim was assigned to Denise Newman, who completed an initial review and phone conversation with the Danganans on that same day. Also on that same day, September 22, 2016, American Family completed review of photos of the property that it had received through a company hired to inspect the leak called Service Master. American Family determined that "the cause of loss [was] the supply line of the toilet on [the] first floor." American Family noted that it was "unknown if the line broke or was chewed by the rats/mice seeking water." Notes entered by American Family into its claim activity log at around that time indicated that it appeared that the leak had been "occurring for an extended time . . . a month or longer." Based on this information, a note was entered into American Family's claim activity log that there was "compelling evidence due to the extent of water, mold, deterioration and rodent damages[sic] to indicate that this toilet supply line leak has been continuing for at least 2 weeks or more."

On Friday September 23, 2016, the Danganans travelled to Nevada and inspected the property with Newman. Vermin droppings and mold were present throughout the property on the date of inspection. Sometime between September 23 and September 26, 2016, American Family reviewed water bill statements. Water usage in the billing statement for July 8 through August 8, 2016 showed an increase in water usage from 55 gallons to 218 gallons in average daily use. Another billing statement from between August 9, 2016 through September 7, 2016 showed an increase in water usage from 218 gallons to 466 gallons in average daily use. After reviewing this information, American Family determined that the water damage was caused by a continuous or repeated leakage of water or steam from within a plumbing system which occurred over a period of at least several weeks if not months, and denied the claim on September 26, 2019. American Family sent a denial of coverage letter to the Danganans on September 26, 2016.

The Danganans hired Hudson Public Adjusters to assist them with their appeal of American Family's denial of their claim. The Danganans also hired an expert, M. Chris Gusik, a Senior Field

Consult and Managing Partner with Adaptive Environmental Consulting, who evaluated the evidence concerning the water damage. The expert noted that "[s]ubject property water damage would have occurred immediately at line rupture provided water pressure. Water escape occurred over a period of 57 to 70 days provided calculated cycle flow rates and billings." The expert also stated that "[t]he water line condition and Property conditions support the water line observed, as well as other in-property water lines pictured attached to appliances, failed likely from "vermin" chew damage."

American Family's corporate representative testified in his deposition that, under the Policy, if a rodent, like a mouse/rat chewed through the water supply line causing it to fail, American Family would cover the loss caused by the water if the "the water damage occurred right away." American Family's representative also agreed that gnaw marks would be indicative that rodents or vermin had chewed through the line.

Neither the Danganans nor American Family dispute the fact that the cause of the supply line leak in the toilet was due to rodents or vermin chewing the water supply lines.

### b. Disputed Facts

The parties largely dispute the legal effect of the circumstances.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

**V.     DISCUSSION**

An insurance policy is a contract, and questions of contract interpretation are questions of law. Fed. Ins. Co. v. Coast Converters, 339 P.3d 1281, 1284 (Nev. 2014). When construing an insurance policy under Nevada law, the Court must read the policy "as a whole," and "its language should be analyzed from the perspective of one untrained in law or in the insurance business. Policy terms should be viewed in their plain, ordinary and popular connotations." Fourth St. Place v. Travelers Indem. Co., 270 P.3d 1235, 1239 (Nev. 2011) (citing Am. Excess Ins. Co. v. MGM, 729 P.2d 1352, 1354 (Nev. 1986)). If a term in an insurance policy is ambiguous, it will be construed against the insurer, because the insurer drafted the policy. Powell v. Liberty Mut. Fire Ins. Co., 252 P.3d 668, 672 (Nev. 2011). "The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted." Id. (citing United Nat'l Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1157 (Nev. 2004)). "[A]lthough an individual clause standing alone might appear to contain no ambiguity, the policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions." Nat'l Union Fire Ins. v. Reno's Exec. Air, 682 P.2d 1380, 1383 (Nev. 1984). "A court must look to the entire contract of insurance for a true understanding of what risks are assumed by the insurer and what risks are excluded." Id. "While clauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer." Id. However, the Court must be careful not to "rewrite contract provisions that are otherwise ambiguous . . . [or] increase an obligation to the insured where such was intentionally and unambiguously limited by the parties." Fed. Ins. Co., 339 P.3d at 1285 (citing Farmers Ins. Grp. V. Stonik ex rel. Stonik, 867 P.2d 389, 391 (1994)).

When an insurer wishes to exclude coverage, the insurer "must (1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding covering under the exclusion is the only interpretation of the exclusion that could be fairly made, and (3) establish that the exclusion clearly applies to this particular case." <u>Powell</u>, 252 P.3d at 674.

The Court first addresses the Danganans' breach of contract claim. A failure to cover an event that is covered under the Policy constitutes a breach of contract under Nevada law. <u>See</u> <u>Fourth St. Place</u>, 270 P.3d 1235, at 1239. Thus the Court begins where it must, with contract interpretation. The Danganans argue that the "leakage and seepage" provision of the Policy is ambiguous. Specifically, they claim that the plain, ordinary meaning of the word "leakage" refers to a "gradual or low volume water event," borrowing a definition adopted by a Michigan state court in an unpublished case. The Danganans argue that the water damage that occurred on the property was not a "gradual or low volume water event" and thus should not be subject to the leakage and seepage exception. The Danganans further argue that since the policy unmistakably communicates that a continuous leakage over a period of "weeks, months, or years" is excluded, that damages not caused by "weeks, months, or years" would be covered. "Weeks" would have to mean a minimum of 14 days. The Danganans point to their expert's report that the damage sustained to the property from the spraying water line would have occurred within the first week. On this basis, they assert, the Danganans should be entitled to the interpretation that affords the greatest possible coverage to them.

American Family argues that the "leakage and seepage" provision is not ambiguous. It points out that to read both "leakage" and "seepage" to mean "gradual or low volume water event" would render one term superfluous to the other. American Family points to language in the Policy that states that continuous water leaks for a period of weeks, months, or year are excluded regardless of whether there may have been a contributing, concurrent or even subsequent cause of the loss.

The Court finds that the Policy, when read as a whole, is ambiguous as to how the "leakage and seepage" provision applies to the provision allowing for coverage of water loss caused by rodents or vermin. As a preliminary matter the Court rejects the Danganans' proffered common

usage of "leakage" to mean "gradual or low volume water event."  Dictionary definitions of the term refer to fluid being released but not necessarily to the volume of the release. <u>See</u>, <u>e.g.</u>, <u>Leakage</u>, <u>Oxford English Dictionary</u> (online edition)  (defining leakage as "[t]he action of leaking; admission or escape of water or other fluid through a hole in a vessel, etc.' loss of fluid by this means."). Thus, the Court does not find that the terms "leakage" and "seepage" are themselves ambiguous—but that the "leakage and seepage" provision is ambiguous when read in conjunction with the rodent exception.

The Court finds that the policy is ambiguous in terms of the limitation on coverage for water damage caused by vermin or rodents. The policy clearly indicates that "we cover loss caused by water or steam" when the cause of the "escape" of this water is rodents or vermin. This section creates a clear expectation of coverage for water damage arising from vermin or rodents damaging the internal plumbing of the dwelling. Yet the policy also appears to exclude certain types of "continuous or repeated seepage or leakage of water" damage that occurs over "a period of weeks, months or years." This ambiguity is unresolved in the policy.

For example, the Court notes that the rodent exception uses the term "escape," in relation to the accidental release of water rather than "leakage or seepage." One basic principle of contract interpretation is that "every word must be given effect if at all possible." <u>Bielar v. Washoe Health Sys., Inc.</u>, 306 P.3d 360, 364 (Nev. 2013). The Court thus finds the Policy is also unclear as to when water "escape" becomes "leakage or seepage" or vice versa.  These terms are not explicitly defined and there is no explanation in the contract of what these terms may be separately or commonly describing. There is therefore no clear or unambiguous mechanism or explanation in the policy to describe how the coverage for water damage by vermin interacts with the exclusion under the policy for "continuous" water "seepage" or "leakage" that occurs over "a period of weeks, months or years." Such ambiguity is critical here because the policy undisputedly covers some types of water damage.

Under American Family's suggested unambiguous reading of the "weeks" portion of the "leakage and seepage" provision, an insured would be covered by its policy if he or she suffered water loss due to rodent chew only up until thirteen days after the water loss occurred. Any leaking

or seeping in excess of thirteen days would not be covered as this would then be excluded by the "weeks" provision. The Court finds nothing on the face of the Policy that says anything about the number of days required for coverage—the thirteen days is merely an inference extrapolated from the "weeks" provision. Such an important inferred limitation is not obvious or even reasonable to the Court, let alone to one "untrained in law and the insurance business." Fourth St. Place v. Travelers Indem. Co., 270 P.3d at 1239. The impact and effect of the "weeks" period exclusion is thus a further source of ambiguity in the contract.

The Court is further unpersuaded by the alleged unambiguous reading of the policy by American Family, because it leaves no room for when an insured first becomes aware of the damage. In this case, the expert report revealed that there had been continuous water leakage over a period of at least fifty-seven days, but that the precipitating event was rodent chew. The Danganans did not become aware of the damage until at least several weeks after it occurred. The Court thus does not find that it is a reasonable reading of the Policy that an insured be required to report a loss to an insurance company when the insured was completely unaware of the loss and the loss would have been covered had the insured been aware of it.

Construing the ambiguity against the insurer and considering the totality of the policy provisions, the Court construes the policy to include coverage for water damage from a continuous flow of water that is caused by rodents but does not allow coverage for such damage when the insured is aware of the leak and/or the damage but does not report it for weeks. The Court further construes the policy to require prompt reporting of water damage. In other words, so long as the insured reports the water loss due to rodent chew promptly upon learning of the chew, the insured is covered up until that point for any damage caused by such water loss. This is the most reasonable interpretation of the policy considering Nevada law.

The Court further finds as a matter of law that American Family breached the contract or policy in this case. The policy, even without the Court's construction, clearly provided for coverage for water damage that arises from vermin or rodents. It is undisputed in this case that rodents or vermin caused the initial damage to the plumbing which lead to the "escape" of water. It is also undisputed that the Plaintiffs are seeking reimbursement for the water damage caused by

vermin damaging the internal plumbing of the home. It is also undisputed that the Danganans submitted their claim on the day that they learned of the water loss. Thus, the Court will construe the provisions in favor of the Danganans and finds that all water loss damage that occurred as of September 21, 2016—the date on which the Danganans became aware of the loss and reported it to American Family—is covered by the Policy. The Court consequently finds American Family's failure to find the event covered a breach of contract and grants summary judgment to the Danganans on their breach of contract claim.

The Court next addresses the Danganans' bad faith claim. Under Nevada law, to make out a prima facie case of bad faith, the plaintiff must "establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." Powers v. United Servs. Auto. Ass'n, 962 P.2d 596, 604 (Nev. 1998). The Court finds that there are disputed questions of material fact as to whether or not American Family acted in bad faith when processing the Danganans' claim. While it is true that the ambiguity of a coverage provision cannot serve as an absolute defense to a bad faith claim, the mere denial of a covered claim, without more, does not *per se* support a finding of bad faith. See Powers, 962 P.2d at 604 (finding that jury had substantial evidence to support bad faith claim after experts testified that investigation was improper and in violation of procedures); Albert H. Wohlers & Co. v. Bargis, 969 P.2d 949, 957 (Nev. 1998) (finding that jury had substantial evidence to support bad faith claim after hearing evidence that insurance company concealed from insured a clause indicating significant reduction in coverage). Nonetheless, the parties here dispute, *inter alia*: a) whether American Family conducted an appropriate investigation, b) whether American Family sought to fabricate unfounded reasons for denying coverage, c) whether American understood and knew that the ambiguity in the policy supported coverage and d) whether American Family contacted employers of the Plaintiffs and their daughter to intimidate them regarding their pursuit of coverage. To make a finding of bad faith at this point thus requires credibility assessments and factual findings that are best reserved for the triers of fact. The Court thus denies summary judgment to either party on the bad faith claim.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs Robert and Myrna Danganan's Motion for Summary Judgment (ECF No. 43) is granted as to the breach of contract claim and denied as to the bad faith claims handling claim. This case will proceed to trial on the amount of damages on the breach of contract claim and the bad faith claim.

**IT IS FURTHER ORDERED** that Defendant American Family Mutual Insurance Company's Motion for Summary Judgment, (ECF No. 42) is denied in its entirety.

**IT IS FURTHER ORDERED** that a joint pretrial order shall be filed by October 21, 2019.

DATED: September 30, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**